**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ROBBIN LACEY,**

       **Plaintiff,**              **Case No.:**

**v.**

**DIRECTIVE GROUP, INC. and
LISA MAIER, individually,**

       **Defendants.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, ROBBIN LACEY, hereby sues Defendants, DIRECTIVE GROUP, INC. (hereinafter "DIRECTIVE GROUP") and LISA MAIER, individually, and states as follows:

**INTRODUCTION**

This is an action brought pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et. seq.* ("FLSA") to recover unpaid overtime wages and liquidated damages owed to Plaintiff, as well as 26 U.S.C. § 7434 and the Florida Deceptive and Unfair Trade Practices Act, *Fla. Stat.* § 501.201 *et seq*.

**JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1367.

2.      Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3. Plaintiff, ROBBIN LACEY, is an adult and a resident of Pasco County, Florida.

4. Defendant, DIRECTIVE GROUP, is a Florida Profit Corporation authorized and doing business in this Judicial District.

5. Defendant, LISA MAIER, is a corporate officer/director of Defendant, DIRECTIVE GROUP, with operational control and direct control over the day-today operations, including compensation of employees and is therefore an employer under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

6. Defendants are covered employers under the Fair Labor Standards Act.

7. Plaintiff was an employee of Defendants pursuant to 29 U.S.C. § 203(e)(2), Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203(d), and Defendants employed Plaintiff within the meaning of 29 U.S.C. § 203(g).

## FACTUAL ALLEGATIONS

8. On or about March 25, 2020, Defendant Lisa Maier (CEO) contacted Plaintiff, stated that Defendants were interested in Plaintiff's resume and scheduled an interview. Maier required Plaintiff to provide Defendants with a minimum of six (6) business and personal references.

9. Plaintiff was required to go through a series of interviews and was further required by Defendant to pass a "Solutions Selling" exercise as a condition of being hired.

10. On April 14, 2020, Maier welcomed Plaintiff "as an integral member of our illustrious team!"

11. On or about April 20, 2020, Plaintiff began her employment with Defendants as the Business Development Director.

12. Defendants treated Plaintiff as an independent contractor, rather than an employee. To that end, Plaintiff signed an Independent Sales Contract (also referred to as Independent Contractor Agreement). The agreement was for an "unspecified term date" and required the parties to resolve any disputes via arbitration. The agreement also included a detailed, 4-page job description.

13. In addition to the Independent Sales Contract, Defendants required Plaintiff to sign a twelve (12) page Confidentiality, Non-Compete, and Invention Assignment Agreement.

14. Defendants held Plaintiff out as one of its "Leaders" in several of Defendants' business proposals to prospective clients.

15. Defendants agreed to compensate Plaintiff at a rate of $2,500 to $3,000 per month, plus commissions.

16. Between approximately April 20, 2020 and April 30, 2020, Plaintiff was required to attend daily meetings with Maier, as well as weekly "Mastermind Meetings" with all of Defendants' staff.

17. Moreover, Plaintiff was required to participate in daily trainings with Maier for a two-week period. In addition to the daily trainings, Maier required Plaintiff to participate in "Solutions Selling" trainings.

18. Plaintiff was also required to utilize Defendants' CRM software, despite Plaintiff having her own CRM software that she could have used.

19. In or around early May 2020, Maier and Todd Rader (Digital Marketing Strategist) required Plaintiff to upload all of Plaintiff's LinkedIn connections and any lead or prospect lists so Plaintiff could convert them into sales and generate revenue for Defendants. As a result, Plaintiff turned over approximately 507 contacts to Defendants. In addition, Maier demanded that Defendants' website developer be provided access to Plaintiff's approximately 1,500 LinkedIn contacts in order to request a review of their websites.

20. Upon receipt of those contacts, Maier and Rader sent out solicitation emails on behalf of Defendants, which excluded Plaintiff's name. Instead, the emails contained the name of the Director of Paid Advertising.

21. From approximately mid-May 2020 to late-May 2020, Maier insisted that Plaintiff work nights and weekends to read the book "Solutions Selling" that Maier assigned to Plaintiff. Moreover, from May 1, 2020 to July 2, 2020, Plaintiff was required to attend meetings with Maier four (4) to five (5) times per week, as well as weekly Mastermind Meetings with all staff.

22. Plaintiff was expected to work for Defendants 8-10 hours per day, plus weekends. In particular, Plaintiff was required to:

    a. Make sales calls during the weekdays for at least 6-10 hours per day;

    b. Do trainings at night;

    c. Prepare proposals during the evenings and weekends; and

    d. Be available/on-call 24 hours per day.

23. Maier required Plaintiff to submit all "discovery" and prep work to her at least 24 hours prior to a scheduled prospect meeting. Maier also required Plaintiff to spend an hour explaining the rationale for the questions to be asked as part of preparatory work.

24. Plaintiff was required to use Defendants' Zoom account for calls with prospects.

25. In or around mid-June 2020, Maier requested that Plaintiff begin contacting several list brokers to negotiate rates to provide email addresses for consumers who purchased products from "As Seen on TV" infomercials.

26. On several occasions, Plaintiff objected to Defendants' classification of Plaintiff as an independent contractor. For example, during the repeated and mandatory phone calls with Maier, Plaintiff told Maier that the requirements put on Plaintiff by Defendants were that of an employee and not an independent contractor.

27. Thereafter, Plaintiff proposed a revised Independent Contractor Agreement to Maier due to the consistent treatment of Plaintiff by Defendants as an employee rather than an independent contractor.

28. As the month of June 2020 continued, Maier became more hostile toward Plaintiff.

29. On June 26, 2020, Maier told Plaintiff that she "absolutely forbid" Plaintiff to schedule another Zoom meeting until Plaintiff received training.

30. On or about July 1, 2020, Maier directed Plaintiff to make appointments with all of Plaintiff's prospects.

31. On or about July 2, 2020, Maier instructed Plaintiff to stop making calls to CEOs and CMOs of other companies and focus on creating a PowerPoint presentation for one prospective client. Plaintiff told Maier that creating PowerPoint presentations was not a responsibility outlined in her Independent Sales Contract. Maier sent Plaintiff a message stating that Plaintiff was "flirting with insubordination" and insisted that they set up a meeting to discuss Plaintiff's alleged insubordination.

32. On July 6, 2020, at 7:07 a.m., Plaintiff objected to Defendants' classification of Plaintiff as an independent contractor. Specifically, Plaintiff sent Maier an email outlining the Internal Revenue Service's (IRS) independent contractor test and further noted that only employees can be insubordinate on the job.

33. On July 6, 2020, at 8:31 a.m., Maier emailed Plaintiff and attached a disciplinary letter titled "Sales Performance / ICA Replacement Discussion." In her email, Maier noted that, if Plaintiff failed to bring a "positive presence" to Defendants, it would "lead to disciplinary action, up to and including termination . . ."

34. In the Sales Performance / ICA Replacement Discussion, Maier wrote: "Today we met to discuss how we can work collaboratively to help you attain your personal sales goals, while at the same time, achieving the quota/performance standards and quality of presentation required in your position here at DirectiveGroup." Maier further noted that Plaintiff was "nearing [her] 12-week point of employment here . . ." Maier concluded the disciplinary action by informing Plaintiff that Defendants were "terminating for non-performance" the Independent Contractor Agreement and replacing it with a new agreement, which would

include Plaintiff being required to share commissions with Defendants.  Furthermore, Maier noted that she and Plaintiff would "revisit each quarter to determine status."

35. Plaintiff responded that she was sending the new ICA to her attorney for review.  In response, Maier informed Plaintiff that Defendants were "temporarily paus[ing]" Plaintiff's work with Defendants.

36. On July 6, 2020 at 12:10 p.m., Maier sent Plaintiff an email stating: "Also, although we have you classified as an Independent Contractor per your request, my realization that there is quite a bit more day-to-day guidance than originally planned has caused me to wonder whether you should be an employee or IC.  Can you ask your attorney to provide the rationale to continue you as an IC?"

37. On July 10, 2020, Maier demanded that Plaintiff sign the new Independent Contractor Agreement and informed Plaintiff that she was unilaterally signing the July 6, 2020 disciplinary letter.

38. Plaintiff refused to sign both documents and Maier informed Plaintiff that she was terminated as of July 6, 2020, despite Plaintiff having performed work for Defendants between July 6, 2020 and July 10, 2020.  On August 2, 2020, Defendants issued Plaintiff a check in the amount of $217.39 for July 1, 2020 and July 2, 2020 "payroll."

39. Defendant Directive Group has failed to pay Plaintiff for commissions earned during her employment.   At the time of Plaintiff's termination, the majority of business that Defendant was working on came from contacts/leads provided to Defendant by Plaintiff.

40. Plaintiff worked an average of approximately 55 to 60 hours per work week; however, Plaintiff was not compensated at a rate of time and one-half her regular rate of pay for all hours worked over forty (40) in a work week.

41. Plaintiff performed work for Defendants in excess of forty (40) hours per work week, for which Defendants knew or should have known.

42. At all material times, Plaintiff was regularly required to work hours in excess of the maximum hours allowed by law (overtime hours). However, Defendants failed to keep accurate time records reflecting the hours worked by Plaintiff.

43. Defendants' violations of the FLSA were knowing, willful, and in reckless disregard of the rights of Plaintiff.

44. Plaintiff has retained the services of Florin Gray Bouzas Owens, LLC and is obligated to pay his legal counsel a reasonable fee for their services.

## COUNT I
## FAIR LABOR STANDARDS ACT - UNPAID OVERTIME

45. Plaintiff, ROBBIN LACEY, realleges and incorporates paragraphs one (1) through forty-four (44) as though set forth fully herein.

46. The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees at least the prevailing minimum wage for all hours worked and overtime at a rate of not less than 1 ½ times the regular rate of pay for all hours worked in excess of the maximum hours allowed by law (overtime hours).

47. Plaintiff was a non-exempt employee of Defendants. Therefore, Plaintiff is entitled to be paid overtime compensation for all overtime hours worked.

48. Throughout her employment with Defendants, Plaintiff worked in excess of the maximum hours allowed by law (overtime hours), for which she was not compensated at the overtime rate.

49. Plaintiff was/is entitled to be paid overtime compensation for all overtime hours worked.

50. Defendants' failure to pay Plaintiff overtime at a rate not less than 1 ½ times the regular rate of pay for work performed in excess of the maximum hours allowed by law (overtime hours), violates the FLSA, 29 U.S.C. §§ 201 *et. seq.,* including 29 U.S.C. § 207.

51. Defendants have failed to make, keep and preserve records with respect to Plaintiff sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 *et. seq.*, including 29 U.S.C. § 211(c) and § 215(a).

52. Defendants' violations of the FLSA were knowing, willful, and in reckless disregard of the rights of Plaintiff.

53. As a direct result of Defendants' violations of the FLSA, Plaintiff suffered damages by being denied overtime wages in accordance with § 207 and § 216(b) of the FLSA.

WHEREFORE, Plaintiff respectfully requests all legal and equitable relief allowed by law including judgment against Defendants for:

(a) Overtime compensation, liquidated damages, and prejudgment interest;

(b) Payment of reasonable attorneys' fees and costs incurred in the prosecution of this claim;

  (c) A judicial determination that the FLSA was violated;

  (d) An adjudication on the merits of the case; and

  (e) Such other relief as the court may deem just and proper.

## COUNT II
## FLORIDA'S PRIVATE WHISTLEBLOWER'S ACT

54. Plaintiff, ROBBIN LACEY, realleges and incorporates paragraphs one (1) through forty-four (44) as though set forth fully herein.

55. This is an action for damages pursuant to Florida's Private Whistleblower's Act ("FWA"), §§ 448.101-105, *Florida Statutes*.

56. Plaintiff was an employee of Defendant Directive Group under the FWA because Plaintiff performed services for and under the control and direction of Defendant for wages or other remuneration.

57. Defendant was Plaintiff's employer under the FWA because Defendant is a private individual, firm, partnership, institution, corporation, or association that employs ten (10) or more persons.

58. Defendant took a prohibited retaliatory personnel action against Plaintiff, in violation of §448.102(3), *Florida Statutes*, because Plaintiff objected to, or refused to participate in, an activity, policy, or practice of Defendants which is in violation of a law, rule, or regulation or that Plaintiff had an honest, good-faith belief was in violation of a law, rule, or regulation. Specifically, Plaintiff objected to and/or refused to participate in violations of federal and Florida law, including, but not limited to: 26 U.S.C. § 7434, 29 U.S.C. §201, *et seq.*, *Fla. Stat.* § 501.201 *et seq.* and, as a result, was terminated from her employment.

59. As a result of the retaliatory actions of Defendant, Plaintiff has suffered damages including, but not limited to: lost wages, benefits, and other remuneration, emotional pain and suffering and other compensatory damages and is requesting all available relief to which Plaintiff is entitled as set forth in the WHEREFORE clause below.

60. As a result of Defendant's unlawful acts, Plaintiff has and will continue to incur attorneys' fees, which are recoverable under Section 448.104, *Florida Statutes*.

WHEREFORE, Plaintiff demands judgment against Defendant, DIRECTIVE GROUP, and prays for the following relief:

a. Injunction to restrain continued violations of the Act;

b. Reinstatement to the same or an equivalent position;

c. Reinstatement of fringe benefits and seniority rights;

d. Lost wages;

e. Lost benefits;

f. Other remuneration;

g. Attorneys' fees and costs; and

h. Any other compensatory damages allowable at law.

### COUNT III
### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

61. Plaintiff, ROBBIN LACEY, realleges and incorporates paragraphs one (1) through forty-four (44) as though set forth fully herein.

62. Plaintiff brings this claim pursuant to the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), *Fla. Stat.* § 501.201 *et seq.*

63. The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) makes it unlawful to engage in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Fla. Stat.* § 501.204.

64. FDUTPA's prohibitions are extremely broad and reach a wide range of activities.

65. FDUTPA covers conduct that offends established public policy, such as an established public policy that employers correctly characterize their employees as employees rather than independent contractors and pay the proper state and federal taxes for such employees.

66. Plaintiff is permitted to bring suit under FDUTPA even though the unlawful practice of Defendant, DIRECTIVE GROUP, did not involve a consumer transaction. *Fla. Stat.* § 501.211(2).

67. During Plaintiff's employment with Defendant, Plaintiff was improperly classified as an independent contractor by Defendant rather than an employee, so Defendant could attempt to avoid complying with federal and state laws, including but not limited to failure to pay federal payroll taxes and state unemployment taxes.

68. By failing to pay required payroll taxes, Defendant engaged in an unfair method of competition because Defendant paid fewer taxes than competing businesses that follow state and federal tax laws and, therefore, have more money to use in competition against its competing businesses.

69. By incorrectly characterizing Plaintiff as an independent contractor, Defendant violated FDUTPA.

WHEREFORE, Plaintiff respectfully requests all legal and equitable relief allowed by law including judgment against Defendant, DIRECTIVE GROUP, for:

(a) Actual damages;

(b) Declaratory relief;

(c) A judicial determination that Defendant violated FDUTPA;

(d) Injunctive relief;

(e) Attorneys' fees and costs;

(f) Such other relief as the court may deem just and proper.

## COUNT IV
## BREACH OF CONTRACT- UNPAID WAGES and COMMISSIONS

70. Plaintiff, ROBBIN LACEY, realleges and incorporates paragraphs one (1) through forty-four (44) as though set forth fully herein.

71. Pursuant to Defendant, DIRECTIVE GROUP's, Independent Sales Contract, Defendant was required to pay Plaintiff commissions earned as defined by the plan.

72. Defendant failed to pay Plaintiff all commissions earned as defined by the Independent Sales Contract and is in breach of the agreement.

73. Additionally, Defendant failed to pay Plaintiff for hours worked between July 3, 2020 and July 10, 2020 in breach of its agreement with Plaintiff.

74. Defendant, despite Plaintiff's reasonable attempts to obtain payment of these earned monies, has failed and refused to make payment as required by the parties' agreement.

75. Plaintiff is entitled to an award of attorneys' fees and costs pursuant to Florida

Statute §448.08.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant, DIRECTIVE GROUP, and for damages as follows:

    a.    Payment of earned unpaid wages;

    b.    Pre-judgment interest;

    c.    Post-judgment interest;

    d.    Attorney's fees and costs; and

    e.    For such other relief as the Court deems equitable

## DEMAND FOR JURY TRIAL

76.    Plaintiff, ROBBIN LACEY, demands a trial by jury.

Dated this 18th day of December, 2020.

        **FLORIN GRAY BOUZAS OWENS, LLC**

        */s/ Gregory A. Owens*
        **GREGORY A. OWENS, ESQUIRE**
        Florida Bar No.: 51366
        greg@fgbolaw.com
        **WOLFGANG M. FLORIN, ESQUIRE**
        Florida Bar No.: 907804
        wolfgang@fgbolaw.com
        16524 Pointe Village Drive
        Suite 100
        Lutz, Florida 33558
        (727) 254-5255
        (727) 483-7942 (fax)
        *Trial Attorneys for Plaintiff*